UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 2:14-CR-71 PS |
| | ) | |
| SAMUEL BRADBURY | ) | |

## OPINION AND ORDER

The government has charged Samuel Bradbury with wilfully threatening the use of fire or an explosive in violation of 18 U.S.C. § 844(e). It alleges Bradbury posted a message on Facebook in which he threatened to bomb the Tippecanoe County Courthouse and kill certain law enforcement officers and judges. A few days after the post went up, it came to the attention of Detective Eager of the West Lafayette Police Department. Eager summarized Bradbury's post in an affidavit for a warrant to search two addresses associated with Bradbury, which a Tippecanoe County judge promptly issued. Bradbury argues that he is entitled to a *Franks* hearing because Eager deliberately misled the issuing judge by omitting key facts from the warrant affidavit. For the reasons stated below, the motion is **DENIED**.

## Background

On the evening of June 19, 2014, Samuel Bradbury, a twenty-something Tippecanoe County resident, signed on to Facebook and posted a message on his "wall." I am going to reproduce Bradbury's post in full, since this motion turns on the content of the post:

1

I can't keep silent on this conspiracy anymore. I have to reveal some truth. My buddy and comrade Ant has been catching some flack for some of his posts about killing cops. I have to let out the truth. Jerad and Amanda Miller were losers. They were part of our group, the 765 Anarchists, the town's cop killing group run by none other than myself, Sam Bradbury. When we discovered that Jerad and Amanda were CIs and in with the boys in blue, we sent them out to the Bundy Ranch to cause controversy elsewhere because we didn't need them snitching on our business. I hadn't heard from him since that event, but some of our comrades gave the command and that's why Jerad and Amanda Miller killed those cops in Las Vegas. I thought Jerad was cool, but fuck him, he was a CI. Great job I must say, but not what we wanted. We, the 765 Anarchists, including myself and Ant are part of a much larger plot that we've been forming for years to kill cops in the local area, and specifically to take out WLPD Officer Troy Green and Tippecanoe County Sheriff, Tracy Brown. Jerad and Amanda were just following 765 Anarchist group orders, but they had fallen out of favor with the group after we discovered they were working with the police as confidential informants. While we are glad that they killed some police, the 765 Anarchists are looking to make waves in the 765 area, specifically Lafayette. The top two on our hit list are Troy Green of the WLPD and Tracy Brown, Tippecanoe County Sheriff. We have field agents out currently gathering information and planning the attack. We have gathered enough thermite and explosives that we intend to not only kill those two pigs and any others who get in our way, but also to cause extreme damage to the county's various offices' equipment, including police cars and police buildings. Before the month is over, we intend to incinerate and destroy no less than 6 police cars, as well as the Tippecanoe County Courthouse, with hits specifically targeted on Judge Les Meade and Judge Loretta Rush also. The courthouse will be blown to pieces within the month, we have agents operating all over the city, and some all over the country. Ant is nothing more than a fall boy, although we do have plans to use him in a suicide strike on the police or a suicide bombing on a local police building before we are through. Our arsenal is massive, and our group has well over 50 supremely dedicated members who are willing to die. I can't let this story go on falsely anymore, Jerad and Amanda Miller didn't do shit, they were outcasts of the group, but they brought us the attention we needed. I, Sam Bradbury, am responsible for the organization of the group and the acquisition of the chemical weapons, incendiaries, explosives, munitions, and general arms. We will not stop this plan, we will cause chaos and terror. We will destroy the Tippecanoe County Courthouse in a blaze of glory and we will take out Tippecanoe County Sheriff Tracy Brown, no matter what the cost, even if we lose all of our members in the process, we will not go down without a fight and causing serious damage. So watch out, the cop killers are out. The 765 Anarchists are going to purge the vile

pig scum from this land and restore constitutional rights to the people. Call us crazy, call us killers, call us heroes and patriots. We're okay with all of it. Remember - KILL COPS, STICK PIGS, AND WATCH OUT FOR THE 765 ANARCHISTS, INCLUDING SAM BRADBURY AND ANT!

(FREE SPEECH EXERCISE FOOLS)

Bradbury's Facebook post makes repeated references to two individuals named "Jerad and Amanda Miller." This assuredly caught the attention of law enforcement. This is because Jerad and Amanda Miller are two former Lafayette, Indiana residents who shot and killed two police officers in Las Vegas on June 8, 2014. *See* Ron Wilkins & Steve Porter, *Las Vegas Cop Killers Nurtured Rage in Lafayette*, Lafayette Journal & Courier June 9, 2014 available at http://www.jconline.com/story/news/crime/2014/06/09/las-vegas-cop-killers-tied-lafayette/10227705 (visited May 7, 2015).

Bradbury's post went up around 11 p.m. Shortly after that, one of Bradbury's Facebook friends took screenshots of the post in order to preserve it. The friend was concerned about the post, and so forwarded the screenshots to another individual the next morning, June 20, 2014. That evening the recipient of the screenshots passed them along to Lafayette Police Officer Maxson. Maxson, in turn, told Lafayette Police Sgt. Jeff Clark, who sent out an email concerning the post to all Tippecanoe County law enforcement on June 21st. This email came to the attention of Detective Eager of the West Lafayette Police Department who applied for a warrant to search two addresses associated with Samuel Bradbury that same day [DE 45-1 at 1-2].

In the warrant affidavit, Eager stated that he was involved in an ongoing death

3

threat investigation and had received Sgt. Clark's June 21 email regarding Bradbury's Facebook post [DE 45-1 at 1]. Eager attested that Sgt. Clark advised that four screenshots of the threatening post were forwarded to Officer Maxson from a concerned citizen. Eager reported that he had spoken with Maxson, who advised him that the screenshots were taken about an hour after the post was made, and Eager determined that the post was made at approximately 11:18 p.m. on the evening of June 19, 2014.

Eager then proceeded to provide a three paragraph summary of Bradbury's post. He noted that Bradbury wrote approvingly of the actions of Jerad and Amanda Miller in Las Vegas and claimed that the Millers were part of the 765 Anarchists group that he purported to lead. ("765" is the area code for much of central Indiana, including Lafayette). Eager wrote in his affidavit that, according to Bradbury's Facebook post, the 765 Anarchists group has been forming for years to kill cops in the local area and that the group had specifically targeted West Lafayette Police Officer Troy Green and Tippecanoe County Sheriff Tracy Brown. Eager recounted Bradbury's claim that he had stockpiled thermite and explosives and that the Anarchists had "field agents" out planning an attack. Eager wrote that Bradbury's post stated that the 765 Anarchists planned to kill police officers and cause extreme damage to the county's equipment, police cars, and buildings by the end of the month. Next, Eager stated, "[t]he post also [sic] to 'incinerate and destroy' no less than 6 police cars, the Tippecanoe County Courthouse, and 'hits specifically targeting' Judge Les Meade and Judge Loretta Rush." [DE 45-1 at 1].

4

Eager's paraphrasing of Bradbury's original post attempted to capture the flavor of the post. For example he quoted Bradbury's boast that the Anarchists would "destroy the Tippecanoe County courthouse in a blaze of glory" and "purge the vile pig scum from the land and restore constitutional rights" [DE 45-1 at 2]. Of special concern to Bradbury is the fact that Eager did not include the "Free Speech Fools" disclaimer that Bradbury appended to the end of the post. Bradbury believes that disclaimer puts everything else into context, and it was misleading to keep it out of the warrant application.

A Tippecanoe County judge issued the warrant to search addresses associated with Bradbury for computers, cell phones or other devices capable of connecting to the internet as well as explosives and weapons. The West Lafayette police also applied for a warrant to search Bradbury's Facebook records [DE 45-1 at 4-5]. While conducting the search, West Lafayette police observed handwritten papers that mentioned words suggestive of suicide or violence. The police obtained yet another warrant in order to search those, and any other papers, that might detail Bradbury's plans [DE 45-1 at 3].

Bradbury has moved for a *Franks* hearing [DE 45], arguing Detective Eager omitted material facts from the warrant affidavit

## Discussion

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the U.S. Supreme Court held that a defendant is only entitled to an evidentiary hearing to challenge the material statements in an affidavit if the defendant "makes a ***substantial preliminary showing*** that a false

5

statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155-56 (emphasis added); *United States v. Merritt*, 361 F.3d 1005, 1010 (7th Cir. 2004). To be entitled to a *Franks* hearing, the Defendant must demonstrate: (1) that the search warrant affidavit contained erroneous information or a material omission; and (2) that the police officers either knew that the affidavit was false or recklessly disregarded the truth. *United States v. Amerson*, 185 F.3d 676, 688 (7th Cir. 1999); *United States v. Carlisle*, No. 1:07-CR-65, 2007 WL 67095, at *3 (N.D. Ind. Feb. 28, 2007). The defendant should accompany the allegations of falsehood or reckless disregard for the truth with "affidavits or sworn or otherwise reliable statements of witnesses." *Franks*, 438 U.S. at 171. Even if a defendant meets this difficult burden, a hearing must be granted only if the affidavit would have been insufficient to establish probable cause had it contained the correct or omitted information. *Id.*

The Defendant has not made the necessary showing to meet the high standard necessary to entitle him to a *Franks* hearing. Bradbury points to two specific omissions, which I'll address in a minute, but his primary argument is more general. Bradbury argues that Detective Eager misrepresented his post by paraphrasing it instead of copying it in full. He argues that the post was a flight-of-fancy, a "story," about "restor[ing] constitutional rights to the people" [DE 45 at 7]. In the post, Bradbury used "symbolic imagery" and piled up increasingly "fantastical" claims in order to drive home his message about the Constitution. *Id.* Detective Eager's paraphrase, so this

6

argument goes, ripped Bradbury's story out of context and stripped it of its nuance. By simply listing all of Bradbury's threats, Eager made it seem like Bradbury was, well, threatening.

Bradbury's argument fails for the simple reason that the Facebook post, by itself, provided enough probable cause to justify a search warrant. So whatever "context" was lost in translation is immaterial. Bradbury's post is alarming. Perhaps one might read it to be nothing more than the ranting of an angry man. But no rational judge presented with the entirety of the Facebook post could come to the conclusion that probable cause didn't exist to authorize the search. What judge would take that chance?

Probable cause exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. *U.S. v. Sewell*, 780 F.3d 839, 845 (7th Cir. 2015) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The Facebook post easily meets this standard. The post sets forth a specific, plausible-seeming plot to kill local law enforcement officers and bomb local buildings and equipment. Bradbury targeted specific individuals who would be vulnerable to the type of attack Bradbury described. There is nothing fantastical or implausible about killing a local sherif. He described the specific means he planned to employ - "thermite and explosives"- as well as the time-frame for the attacks - "before the end of the month." He claimed that he was responsible for acquiring the weapons necessary to carry out the plan. And, in order to enhance his credibility, Bradbury associated himself and his movement with two real-life cop-killers

with real ties to the Lafayette area who had killed two police officers just weeks before.

If Bradbury intended his post to be symbolic or political hyperbole, then he missed the mark by a wide margin. In the course of the post, Bradbury makes some incredible claims regarding the size and reach of his "765 Anarchist" group, but the bulk of the post was alarmingly specific and concrete. A statement like "If I'm drafted, the first man I want to get in my sights is L.B.J." is political hyperbole. *See U.S. v. Watts*, 394 U.S. 705 (1969). "Before the month is over, we intend to incinerate and destroy no less than 6 police cars, as well as the Tippecanoe County Courthouse, with hits specifically targeted on Judge Les Meade and Judge Loretta Rush also"is a statement of a far different order.

Bradbury puts a lot of stress on the fact that Eager omitted the "Free Speech Exercise Fools" disclaimer from the affidavit. Bradbury argues that the disclaimer unmistakably signals that the post is a symbolic, fantastical political message. I don't buy it. It is certainly possible that a reasonable person would read that disclaimer as signaling that the preceding 200-or-so lines were just a lark. But I think the more reasonable interpretation of that line is that Bradbury was trying to have his cake and eat it too. He wanted to make a credible, serious threat, but wanted to shield himself from any potential legal trouble. So he tacked on a perfunctory disclaimer after two hundred lines of violent threats. Unfortunately for him, it didn't work

In order to get a *Franks* hearing, Bradbury needed to make a substantial showing that the warrant affidavit would have been insufficient to establish probable cause if

8

Detective Eager had copied Bradbury's entire message rather than paraphrasing it. *See Franks*, 438 U.S. at 171. Since the Facebook message sufficed to provide probable cause, Bradbury has not met his burden.

Bradbury points to two other specific omissions from the warrant affidavit. First, Bradbury takes issue with the fact that Eager failed to mention that Judge Rush had been promoted to the Indiana Supreme Court, and thus she no longer worked at the Lafayette courthouse. In the post, Bradbury wrote that the 765 Anarchists planned to "incinerate and destroy . . . the Tippecanoe County Courthouse, with hits specifically targeted on Judge Les Meade and Judge Loretta Rush also" [DE 45-1 at 1]. The theory is that, if Eager had included this fact about Justice Rush in the affidavit, the issuing judge would have realized that Bradbury was just goofing off because it would be impossible to kill Rush by blowing up the Tippecanoe County Courthouse since she's based in Indianapolis. (And what are we to make of the threat against Judge Meade? Bradbury doesn't say).

First, Bradbury is misreading his own sentence. He did not write that the Anarchists are going to blow up the courthouse *in order* to target Rush. The sentence states that the Anarchists are going to blow up the courthouse *and also* "hit" Rush. So Justice Rush's presence or absence at the courthouse is irrelevant to the plan. Second, the warrant was issued by one of Justice Rush's former colleagues on the Tippecanoe County bench who must have been aware of his former colleague's whereabouts. Finally, the idea that Bradbury not only knew about Justice Rush's appointment but

9

referenced it in his message as some kind of elaborate in-joke is just preposterous. A far more reasonable interpretation of this supposed discrepancy is that Bradbury was ignorant of Justice Rush's good fortune.

Finally, Bradbury argues that the police officer misled the issuing judge by making it seem like a concerned citizen was so disturbed by Bradbury's post that she immediately contacted the police when, in fact, there was a significant delay between the posting and its being forwarded to the police. Here, I find that Bradbury is just mistaken. The warrant affidavit clearly shows a delay between the posting and its getting to the police. The affidavit states that the post was made around 11 pm on June 19, that a concerned citizen took screenshots of it around an hour later, but it did not come to police attention until June 21st. So contrary to Bradbury's claim, the warrant accurately lays out the delay between when Bradbury made the post and when the police were notified.

## **Conclusion**

The Court hereby **DENIES** the Defendant's motion for a *Franks* hearing [DE 45]. **SO ORDERED**.

ENTERED: May 11, 2015

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT