UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 2:14-CR-71 PS |
| | ) | |
| SAMUEL BRADBURY | ) | |

**OPINION AND ORDER**

The government has charged Samuel Bradbury with willfully threatening the use of fire or an explosive in violation of 18 U.S.C. § 844(e). The indictment was recently superseded to add an additional charge of maliciously conveying information concerning the use of fire under the same section of the criminal code [DE 63]. In essence, the indictment alleges Bradbury posted a message on Facebook in which he threatened to bomb the Tippecanoe County Courthouse and kill certain law enforcement officers and judges. Bradbury has moved to dismiss the indictment on the grounds that § 844(e) is unconstitutionally overbroad and his post was protected speech under the First Amendment. For the reasons stated below, the motion is **DENIED**.

On the evening of June 19, 2014, Samuel Bradbury signed on to Facebook and posted a message on his "wall." I am going to paraphrase the message here, but readers can refer to my May 11, 2015 order for the full text [DE 59].

In his post, Bradbury stated that he was part of an organization, "the 765 Anarchists," who are organized to kill cops in the Lafayette area. 765 is the area code in the Lafayette area. Bradbury wrote that Jerad and Amanda Miller, Lafayette residents who had recently murdered two police officers in Las Vegas, had acted on the

Anarchists's orders. He wrote that the Anarchists were targeting West Lafayette Police Officer Troy Green and Tippecanoe County Sheriff Tracy Brown, and would kill these two individuals no matter what the cost. He wrote that the Anarchists had gathered enough thermite and explosives to cause "extreme damage" to Tippecanoe County buildings and equipment [DE 39 at 7]. And he stated that, within the month, the Anarchists planned to incinerate six police cars, burn the Tippecanoe County Courthouse, and kill Judge Les Meade and Judge Loretta Rush. Bradbury stated that he was responsible for organizing the group, and that he had acquired "chemical weapons, incendiaries, explosives, munitions, and general arms." *Id.*

After the peroration - "KILL COPS, STICK PIGS, AND WATCH OUT FOR 765 ANACHISTS", etc. - Bradbury ended the post with a parenthetical stating "FREE SPEECH EXERCISE FOOLS." *Id.* at 8. Evidently others responded to Bradbury's alarming post with some discomfort and wrote comments stating that they did not agree with his threatening rant. This must have caused Bradbury to suffer from writer's remorse, because a short while later he added disclaiming comments to his earlier post. I say that this happened "a short while later," because, I am told by the parties that the exact timing of Bradbury's subsequent comments are unknown. In any event, what he said in his supposed disclaimer was that his prior post was a "complete satire" and that he was merely engaging "in an exercise of whether free speech still exists in America." Bradbury goes on to say that "everything in the (original) post is fake. There is no group, there are no weapons or bombs, and there is no plot" [DE 58-1].

2

But the damage had already been done. Bradbury was arrested and charged with a violation of 18 U.S.C. § 844(e) [DE 14]. That statute provides:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate of foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

As a plain reading of the statute reveals, there are two ways to violate it: the first is by making "threats" to use fire or explosives to do harm; the second is to "maliciously convey false information" to do the same thing. Cutting through the clutter of the statute, it seems clear that the first prong punishes the making of actual threats while the latter one punishes people who convey phony threats. The real thrust of the second prong is to prohibit the making of bomb threats where no bomb actually exists. Whether there is any real difference between the two prongs is debatable. A threat can be phony but it still be an actual threat. More on that later. In any event, Bradbury has moved to dismiss the indictment on First Amendment grounds arguing that § 844(e) is unconstitutionally overbroad, both on its face and as applied to him [DE 26].

A statute regulating speech can be overbroad when it "prohibits a substantial

3

amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). But facial challenges to criminal statutes on overbreadth grounds are discouraged. *See Sabri v. United States*, 541 U.S. 600, 609 (2004). The overbreadth doctrine is "strong medicine" and must be employed with hesitation and "only as the last resort." *See New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). That said, the first step of an overbreadth analysis is to construe the challenged statute in order to see how far it reaches. *See Williams*, 553 U.S. at 293. And, if possible, I must construe the statute so as to avoid any constitutional problems. *See Ferber*, 458 U.S. at 769 n.24.

It is true that prohibiting the making of threats and the conveying of maliciously false information, as § 844(e) does, criminalizes speech based on its content, and ordinarily, the First Amendment bars the government from content-based speech restrictions. *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002). But speech integral to criminal conduct is a different story. That type of speech, like fighting words, threats, and solicitation, is categorically outside of First Amendment protection. *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010) (citing *Williams*, 553 U.S. at 297).

A threat constitutes unprotected speech when it is a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black* 538 U.S. 343, 359 (2003). In order to avoid any constitutional problems, Courts have interpreted § 844(e) as prohibiting only this type of speech, often referred to as "true threats." *See United States v. Spruill*, 118 F.3d 221, 228

(4th Cir. 1997) (holding 844(e) proscribes only "true threats"); *See also United States v. Viefhaus*, 168 F.3d 392, 395 (10th Cir. 1999); *United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987). As construed then, § 844(e) is not overbroad because it does not sweep up "a substantial amount of protected expressive activity." *See Williams*, 553 U.S. at 297. It only criminalizes true threats, which are outside of First Amendment protection.

Deciding when something is a "true threat" and when it is mere hyperbole is dicey business. A lot of people spout off online via Twitter, Facebook and other social media. That, of course, is their First Amendment right. But determining when the comments cross the line from permissible First Amendment expression to true threats is difficult. The line is hazy, and the question becomes does speech have to be threatening to a reasonable person who may hear or read the comment or is it the intent of the person making the statement that matters? In other words, is the standard an objective or subjective one? The Supreme Court is grappling with those very questions right now in the case of *Elonis v. United States*, No. 13-983. The appellate decision can be found at 730 F.3d 321 (3d Cir. 2013).

Bradbury concedes, as he must, that true threats fall outside of First Amendment protection. But he takes issue with how such threats are defined. The Seventh Circuit has traditionally employed an objective standard when determining whether a statement constitutes a true threat. The inquiry asks whether a reasonable speaker would understand that his statement would be interpreted as a threat or whether a reasonable listener would interpret the statement as a threat. *See United States v. Parr*,

5

545 F.3d 491, 499 (7th Cir. 2008). Bradbury argues that this objective standard renders § 844(e) unconstitutionally overbroad.

Here's his argument. Threats are barred because they are delivered in a context that causes fear and disruption. "A prohibition on true threats protects individuals from fear of violence and the disruption that fear engenders." *Black*, 538 U.S. at 359 (quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1991)). Bradbury argues that § 844(e) is overbroad because, as construed, § 844(e) criminalizes speech even if the speaker had no intention of disrupting anything or intimidating anyone. Perhaps he was just blowing off steam or composing a work of fiction. Further, the statute bars threatening speech even if the threat is not actually communicated to someone who could be threatened or whose activities could be disrupted. As a result, the argument goes, § 844(e) sweeps up too much protected speech. In order to pass constitutional muster, then, Bradbury contends that the Court must require 1) that the speaker specifically intend to intimidate someone or cause public disruption, and 2) that the threat actually be conveyed to the threatened party.

The requirement that the threat be communicated to the threatened party is foreclosed by *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008). In that case, Parr was charged with threatening to blow up the federal building in Milwaukee in violation of 18 U.S.C. § 2332a(a)(3). *Id.* at 493. Parr's threats were made in the course of private conversations with his prison cellmate who, unbeknownst to Parr, was an informant. *Id.* at 494-495. The Seventh Circuit upheld Parr's conviction despite the fact that Parr's

6

threat was made during the course of a personal, private conversation with someone who had no connection to the threatened building. In doing so, the court held that a true threat "doesn't need to be communicated directly to its victim." *Id.* at 497 (citing *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616-17 (5th Cir. 2004) (holding a threat must be "communicated to either the object of threat *or* a third person.")).

Nor does the Seventh Circuit, at least currently, require specific intent. Until the Supreme Court says otherwise, perhaps through *Elonis,* I am bound to follow and apply an objective standard when determining whether a statement constitutes a threat. *United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005); *United States v. Saunders*, 166 F.3d 907, 913-14 (7th Cir. 1999). As Bradbury points out, the Supreme Court complicated the objective/subjective issue in *Virginia v. Black*, when the Court stated that "[t]rue threats encompass those statements where the speaker *means to communicate* a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359 (emphasis added). Some took this language to indicate that the Supreme Court had imported a subjective-intent analysis into the true threats doctrine. In *Parr,* the Seventh Circuit considered the possibility of switching to a subjective intent standard in light of the *Black* decision, but, ultimately, did not decide the question. *Parr*, 545 F.3d at 500. So I am still bound to apply the objective standard. Once again, whether the standard is a subjective or objective one could be answered any day now in *Elonis*.

As an aside, it's worth noting that most Circuit Courts that have considered the

7

issue have stuck with the objective standard, notwithstanding what was said by the Supreme Court in *Black*. *See, e.g.*, *United States v. Martinez*, 736 F.3d 981, 988 (11th Cir. 2013) (Section 875(c) does not require the government to prove a defendant specifically intended his or her statements to be threatening); *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011) (government need only prove that a reasonable person would have found defendant's communications conveyed an intent to cause harm or injury); *see also United States v. Clemens*, 738 F.3d 1, 12 (1st Cir. 2013); *United States v. Jeffries*, 692 F.3d 473, 481 (6th Cir. 2012); *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009). District courts in this Circuit have followed the same approach. *See United States v. Musgrove*, 845 F. Supp. 2d 932, 945 (E.D. Wis. 2011); *United States v. Haddad*, No. 09 CR 115, 2014 WL 1493152, at *3 (N.D. Ill. Apr. 16, 2014); *United States v. Buddhi*, No. 2:06 CR 63, 2014 WL 2042287, at *4 (N.D. Ind. May 19, 2014).

I think the majority approach is correct. A subjective intent standard would fail to protect the public from the fear and disruption caused by statements that a reasonable speaker would know were threatening, even if he meant no harm. The better-safe-than-sorry response from law enforcement in this case proves the point. Requiring evidence of specific intent could also prove to be very difficult and time-consuming. If Bradbury can convince a jury that no reasonable person could have taken him seriously, then he will be rightly acquitted. But he must face that jury. Accordingly, Bradbury's facial challenge to 844(e) fails because the statute regulates a prohibited category of speech — objective true threats — and is tailored to ensure a "direct causal

8

link between the restriction imposed and the injury prevented." *United States v. Alvarez*, 132 S.Ct. 2537, 2549 (2012).

Bradbury also brings an as-applied challenge to the indictment. He argues that his Facebook post is constitutionally-protected political speech and therefore cannot form the basis of a criminal prosecution. Bradbury may well be right. But, as I said, whether a speech is a true threat or just political hyperbole is a question for the jury at trial, and not for the Court at the motion to dismiss stage. *Parr*, 545 at 497 (7th Cir. 2008) (whether a defendant's statements are ultimately deemed a threats is a question for the jury); *White*, 610 F.3d at 962 (dispute of whether a posting was a solicitation or not was a dispute over the meaning, inferences, and intent that could be drawn from the facts and was for the jury to decide); *see also United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 2010); *Saunders*, 166 F.3d at 912.

## Conclusion

Accordingly, the Defendant's Motion to Dismiss [DE 26] is **DENIED**.

**SO ORDERED**.

ENTERED: May 22, 2015

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

9