UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 2:14-CR-71 PS |
| | ) | |
| SAMUEL BRADBURY | ) | |

## OPINION AND ORDER

This matter is before the Court on three motions from the Defendant: a Motion to Suppress Evidence [DE 55], a Motion to Dismiss the Multiplicitous Count of the Superseding Indictment [DE 67], and a Motion for a *Franks* hearing [DE 71]. For the reasons stated below, the Motion to Suppress and Motion for a *Franks* hearing [DE 55, 71] are **DENIED**, while the Motion to Dismiss the Multiplicitous Count [DE 67] is **GRANTED**.

## BACKGROUND

On the evening of June 19, 2014, Samuel Bradbury posted a message on his Facebook wall in which he wrote about a plot he was involved in to kill public officials and destroy government buildings in the Tippecanoe County area. According to Bradbury's post, the plotters were going to carry out their plan using guns and explosives that he had procured. Although Bradbury tempered his post with a statement that he was just exercising his free speech rights, it must have nonetheless alarmed someone because a friend took screenshots of the post, and those screenshots eventually found their way to the local police. In response, a Lafayette Police officer sent out an email to all law enforcement in Tippecanoe County on the morning of June

21, 2014, advising them of Bradbury's post.

The email kicked off an investigation that, by the end of the day, had resulted in the issuance of three search warrants. The first, which I'll refer to as the Residential Warrant, authorized the search of two residences associated with Bradbury. [DE 55-1.] In order to obtain the warrant, Detective Eager of the West Lafayette Police Department prepared a warrant affidavit with the help of Tippecanoe County Chief Deputy Prosecutor Kristen McVey. [DE 62-1 at 5.] In the affidavit, Eager stated that the police were involved in an "ongoing death threats investigation," provided a detailed paraphrase of Bradbury's Facebook post, and summarized the reasons that law enforcement thought that Bradbury's threats were credible. [DE 45-1 at 1.] Eager's Affidavit accurately described the Facebook post as specifically mentioning "thermite and explosives" and the intent to "kill two pigs" as well as a prediction that the "Tippicanoe County Courthouse . . . will be blown to pieces within the month . . ." [*Id.*] Detective Eager's affidavit in support of the Residential Warrant explained why police thought evidence would be found at the two residences and requested a warrant to search the addresses for "cell phones, computers, tablets or any other device capable of internet connection, thermite or any other explosive or bomb-making materials, firearms and ammunition." [DE 45-1 at 2.]

Detective Eager took this affidavit to Tippecanoe County Superior Court Judge Michael Morrissey, who promptly swore out a warrant authorizing the search of the two residences. [DE 62-1 at 5.] As requested, Judge Morrissey authorized officers to

search and seize "CELL PHONES, COMPUTERS, TABLETS OR ANY OTHER ITEM CAPABLE OF INTERNET CONNECTION, THERMITE OR OTHER EXPLOSIVE MATERIALS, BOMB-MAKING COMPONENTS, FIREARMS AND AMMUNITION" [DE 55-1 at 1.] The warrant did not reference the death threat investigation or make any other reference to crimes Bradbury was suspected of having committed.

One of the residences searched by West Lafayette Police was in Pine Village, Indiana. This turned out to be Bradbury's parents' house. [DE 62-1 at 9.] At the Pine Village residence, officers found Bradbury's personal computer. [*Id.* at 14.] Before seizing it, West Lafayette Police Officer Sean Leshney conducted a cursory search of the computer. Essentially, Lenshney woke the computer up and noted what websites were open in Bradbury's browser. [*Id.* at 14-15.] He also clicked over to an open Notepad document and discovered a draft of the threatening Facebook message. [*Id.*] After that, Leshney had the computer taken into police custody. The police later secured a federal warrant in order to conduct a thorough forensic search of the computer. [DE 62-2.]

While conducting the search at the Pine Village residence, West Lafayette Police Officer Wiete noticed some papers in plain view that referenced suicide. [DE 62-1 at 18.] The Residential Warrant did not authorize the officers to seize papers — only electronic equipment — so Officer Leshney told Detective Eager about the discovery, and Eager worked with Prosecutor McVey to prepare another warrant application. [DE 62-1 at 6.] Eager's affidavit for the second warrant — I'll call this the "Papers Warrant" — stated that Officers Wiete and Leshney observed in plain view "handwritten papers that at a

3

glance mentioned words suggestive of suicide or violence" while executing the Residential Warrant. [DE 69-3.] Judge Morrissey then issued a warrant authorizing the search of the Pine Village residence for "Documents, writings, journals or other paperwork that detail any acts of violence toward any person, or plans of any acts of violence against any person or place." [DE 55-2.] Armed with the Papers Warrant, the officer's seized some papers and notebooks from the house. [DE 62-1 at 19.]

Meanwhile, Officer Leshney worked with the local prosecutor to prepare a warrant for Bradbury's Facebook records. A complete copy of the warrant affidavit is not in the record, but I do have the second page. On that page, Leshney appears to continue a paraphrase of Bradbury's post in language that is identical to the first warrant affidavit. [DE 69-2 at 2.] The affiant then states that he has located the Facebook account for a "Sam Bradbury" and requests that a warrant be issued to obtain records for the Facebook account for the time period between May 1, 2014 and June 21, 2014. [*Id.*]

Tippecanoe County Superior Court Judge Thomas Busch issued a warrant authorizing a search of Facebook, Inc. in Menlo Park, California for Bradbury's records. [DE 55-3.] The warrant authorized the search and seizure of essentially all records associated with Bradbury's account for the relevant time period. [*Id.*] The warrant did not limit the search to records related to the threat investigation, but did contain a reference stating "WLPD 2014-2243 (Threats toward Law Enforcement / Terroristic Threats)." *Id.* Leshney uploaded the warrant to the Facebook Law Enforcement Records

portal and, eventually, received the requested records. [DE 69-1 at 12, 16.]

The Government originally charged Bradbury with one count of willfully making a threat to use fire or explosive materials in violation of 18 U.S.C. § 844(e). [DE 14.] On May 14, 2015, the government filed a Superseding Indictment, which added a new count. [DE 63.] As it stands, Count One of the superseding indictment alleges Bradbury willfully made a threat concerning an attempt to kill and injure law enforcement officers and destroy the Tippecanoe County courthouse by means of explosive and fire in violation of 844(e). Count Two alleges Bradbury maliciously conveyed false information regarding an attempt to kill law enforcement officers and destroy the courthouse by use of explosive and fire also in violation of 844(e).

## DISCUSSION

Bradbury has three pending motions before the Court. The first is a motion to suppress the Residential and Facebook warrants on the grounds that they lack particularity. [DE 55.] I held an oral argument on the motion on May 19, 2015. [DE 72.] Bradbury also seeks a *Franks* hearing regarding the Papers Warrant, arguing that the officers misled Judge Busch regarding the content of Bradbury's papers. [DE 71.] And, finally, Bradbury has moved to dismiss Count Two of the superseding indictment on the grounds that the count is multiplicitous. [DE 67.] All three motions are ripe for disposition, and I will take them up in turn below.

### A. Motion to Suppress

Bradbury argues that the Residential and Facebook warrants violate the Fourth Amendment's particularity requirement because neither warrant ties the items to be seized to any particular crime. As a result, he argues, the evidence uncovered during these searches ought to be suppressed.

The Fourth Amendment requires that a warrant "particularly describ[e] the . . . things to be seized." U.S. Const. amend IV. "This requirement precludes the issuance of a warrant that permits a general, exploratory rummaging in a person's belongings, and thereby ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause." *United States v. Vitek Supply Corp.*, 144 F.3d 476, 480-81 (7th Cir. 1998) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). To satisfy the demand for particularity, a warrant must describe the objects of the search with reasonable specificity, but need not be elaborately detailed. *Id.* at 481. Further, when a search involves digital media, as this one did, the Seventh Circuit has instructed police officers "to exercise caution to ensure that warrants describe with particularity the things to be seized and that searches are narrowly tailored to uncover only those things described." *United States v. Mann*, 592 F.3d 779, 786 (7th Cir. 2010).

The police had probable cause to search Bradbury's residence and Facebook account for evidence relating to his threat to blow up the courthouse and kill law enforcement officers. But neither warrant limited the scope of the search officers could conduct to evidence related to this, or any other, crime. The Residence Warrant

authorized the search and seizure of "CELL PHONES, COMPUTERS, TABLETS OR ANY OTHER ITEM CAPABLE OF INTERNET CONNECTION," as well as firearms, bombs and bomb-making materials. [DE 55-1.] The Facebook Warrant contained a reference to "Threats toward Law Enforcement" but nevertheless authorized the search and seizure of all of Bradbury's account information within a date range. [DE 69-2.]

This is a problem. On their face, the Residence and Facebook warrants authorize precisely the type of "exploratory rummaging" the Fourth Amendment protects against. The warrants gave the police the ability to search for evidence of *any* crime that could potentially be found on Bradbury's computer. As another court has recognized, the ability of computers "to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009). Say, for example, Bradbury had tax returns or bank statements stored on his hard drive. The Residence Warrant would allow the police to scrutinize those records for evidence of, say, tax fraud even though there was no probable cause to support such a search. Or say Bradbury had uploaded photos to his Facebook account. Armed with the Facebook Warrant, officers could scrutinize those pictures for evidence of illegal drug use.

That type of exploratory search would obviously be inappropriate. *See Mann*, 592 F.3d at 784 (holding a police officer exceeded the scope of warrant to search computer for evidence of voyeurism when he began searching for evidence of child

pornography). In order to ensure that the scope of a search is confined to evidence relating to a specific crime that is supported by probable cause, a warrant must tie the items to be seized to some particular crime. *See, e.g.*, *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (warrant authorizing seizure of electronic equipment without specifying the legal violation "provided [officers] with no guidance as to the type of evidence sought" and constituted a general warrant); *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009) ("If the warrant is read to allow a search of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement."). This does not mean the warrant has to specify each particular section of the United States Code officers have probable cause to believe a defendant has violated. The Fourth Amendment requires only "reasonable specificity." *Vitek Supply Corp.*, 144 F.3d at 481. But a warrant must include some reference to the offense so that the officers conducting the search are aware of the search's authorized scope and cannot rummage through the computer looking for evidence of unrelated crimes.

That being said, I need to consider more than just the face of the warrants in this case. That's because the Supreme Court has held that a sufficiently particular warrant affidavit can satisfy the Fourth Amendment's particularity requirement so long it has been incorporated by reference into the warrant. *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004). In this Circuit, an affidavit need not be explicitly incorporated or attached to the search warrant; it is enough that the magistrate considers the affidavit before issuing the

8

warrant and the executing officers comply with the warrant's terms. *See United States v. Jones*, 54 F.3d 1285, 1291 92 (7th Cir. 1995); *see also United States v. Dennis*, 115 F.3d 524, 528 29 (7th Cir. 1997) (holding "anticipatory" warrant valid because magistrate judge considered affidavit and officers complied with warrant's terms).

Here the warrant affidavits made clear that Bradbury was being investigated for making a threat on Facebook to kill law enforcement officers and destroy government property using guns and thermite explosives. [DE 69-1; DE 69-2.] There is no doubt that the issuing judges considered the affidavits before issuing the warrants, and both affidavits are referred to in their respective warrant. [DE 55-1; DE 55-3.] Finally, there is no real argument that the officers exceeded the limits of probable cause. In fact, Officer Leshney only conducted a cursory search of Bradbury's computer before obtaining a detailed federal warrant for a comprehensive search. Therefore, because the affidavits were incorporated into the warrants, the warrants satisfied the Fourth Amendment's particularity requirement. And Bradbury's motion to suppress is **DENIED**.

But even if the warrant affidavits were not incorporated, the good faith exception would preclude suppression in this case. Suppression of evidence is not the inevitable consequence of an invalid warrant. *See United States v. Leon*, 468 U.S. 897, 913 (1987). A facially invalid search warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. *Id.* In determining whether the good faith exception should apply in a particular case, the "inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have

9

known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. So even if a warrant is facially invalid, the court must review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid. *See id.* at 923.

To begin with, an officer's decision to obtain a warrant is prima facie evidence that he was acting in good faith. *United States v. Mykytiuk,* 402 F.3d 773, 777 (7th Cir. 2005). A defendant can rebut this evidence by demonstrating that the issuing judge failed to perform his neutral and detached function by serving as a rubber stamp for the police, the officer was dishonest or reckless in preparing the affidavit, or that the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009); *see also United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006)

I view this as a textbook case for application of the good faith exception. Bradbury has not argued that Judge Morrissey or Judge Busch acted as a rubber stamp for the police. And, as I held in a previous order, Officers Eager and Leshney were not dishonest or reckless in preparing the warrant affidavits at issue. [DE 59.] Finally, the warrants and warrant affidavits were not so clearly deficient that no reasonable officers would have relied upon them. The problem with the warrants here — if there was one — is that they didn't specifically say that the search was limited to the recovery of evidence of the crime being investigated, although the affidavit nonetheless made that plain.

10

But even if the West Lafayette Police made a mistake in preparing the warrant, no one could reasonably call their actions "reckless." This is important because in deciding whether the extreme sanction of suppression is proper, under the *Leon* good faith exception, courts should consider whether the officers were merely negligent as opposed to having acted recklessly or deliberately. *See Herring v. United States*, 129 S.Ct. 695, 700 (2009). Suppression of the evidence would not be a sensible response to the actions of the officers in this case. The police were trying to scrupulously follow the rules. Recall that they enlisted the help of Chief Deputy Prosecutor McVey to ensure that the warrants were prepared correctly. And rather than cut corners, the officers went out and obtained a separate warrant when they observed potentially incriminating paper evidence at the Pine Village house. Several additional warrants were obtained before conducting comprehensive searches of Bradbury's computers. As a result, even if the Residential and Facebook warrants in this case were insufficient — and to repeat, I don't believe that they were — the good faith exception would preclude suppression.

**B.      Motion for a *Franks* Hearing**

Bradbury has also filed a separate motion challenging the Papers Warrant. [DE 71.] Bradbury argues that Detective Eager misled Judge Morrissey about the content of the papers the officers saw when conducting the search of the Pine Village residence. Bradbury has called for an evidentiary hearing regarding the veracity of the warrant pursuant to *Franks v. Delaware*.

In *Franks*, the U.S. Supreme Court held that a defendant is only entitled to an evidentiary hearing to challenge the material statements in an affidavit if the defendant "makes a ***substantial preliminary showing*** that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (emphasis added); *United States v. Robinson*, 546 F.3d 884, 887 (7th Cir. 2008). To be entitled to a *Franks* hearing, the Defendant must demonstrate: (1) that the search warrant affidavit contained erroneous information or a material omission; and (2) that the police officers either knew that the affidavit was false or recklessly disregarded the truth. *United States v. Amerson*, 185 F.3d 676, 688 (7th Cir. 1999).

Bradbury argues that Detective Eager misled the issuing Judge by not fully describing, or copying, the contents of the suspicious papers that prompted the warrant application. This is very similar to the argument Bradbury made in his unsuccessful motion for a *Franks* hearing on the veracity of the other two warrants. [DE 45.] In the affidavit, Detective Eager described the documents in question as "handwritten papers that at a glance mentioned words suggestive of suicide or violence." [DE 69-3.] Bradbury argues this was misleading because the documents in question are poems or song lyrics and were not connected to the Facebook threat.

Bradbury's argument is unavailing. First, the affidavit accurately described the document. The paper is not just "suggestive of suicide or violence," it explicitly

12

describes a violent suicide. In it, Bradbury fantasizes, in great detail, about "blowing [his] brains out" in front of an ex-girlfriend. [DE 71-4.]

Further, the alleged omission isn't material. The original Facebook post, by itself, likely provided probable cause to search for papers related to Bradbury's threats. In the post, Bradbury claimed that he was a key member in an organized conspiracy to murder law enforcement officers and had obtained weapons and explosives for that purpose. There is every reason to believe that such a conspiracy, if it existed, would leave a paper trail. So, poem or no, the fact that the officers on the scene discovered writings describing another violent plan provided yet more probable cause to search the house for any papers relating to Bradbury's threat. As a result, Bradbury's motion for a *Franks* hearing is **DENIED**.

C.    **Motion to Dismiss Multiplicitous Count of the Indictment**

The Superseding Indictment charges Bradbury with two Counts in violation of 18 U.S.C. § 844(e). Count One charges Bradbury with "willfully [making] a threat" to kill law enforcement officers and destroy property by means of fire or explosives, while Count Two charges Bradbury with "maliciously convey[ing] false information" regarding that same threat. [DE 63.] Both charges arise out of the same Facebook post, so the Government has essentially outlined two different theories of committing the same offense. Bradbury argues that the Superseding Indictment is multiplicitous. He is correct.

An indictment is multiplicitous if it charges a single offense in separate counts of

13

an indictment. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995). Multiplicitous indictments violate the Constitution's Double Jeopardy clause, which protects against "multiple punishments for the same offense." *United States v. Dixon*, 509 U.S. 688, 745 (1993). In situations like this one, where the government charges a defendant with multiple violations of the same statute based on a single act, I have to look to the criminal statute to determine whether "Congress intended to impose multiple punishment for a single act which violates several statutory provisions." *United States v. Asher*, 96 F.3d 270, 273 (7th Cir. 1996) (quoting *Albernaz v. United States*, 450 U.S. 333, 338 (1981)). In other words, I have to determine the "allowable 'unit' of prosecution" for 844(e). *See Allender*, 62 F.3d at 912.

The allowable unit of prosecution in threats cases is the threatening communication. *See United States v. Frazer*, 391 F.3d 866, 870 (7th Cir. 2004). Since Bradbury made one threatening communication, the Facebook post, he can only be charged with one violation of 844(e). The government more-or-less concedes this in its brief where it acknowledges that 844(e) does not permit multiple convictions of the same underlying conduct and recognizes that, even if convicted on both counts, Bradbury could not be given multiple sentences for his post. [DE 76 at 4-5.]

So the Superseding Indictment is multiplicitous. But multiplicity is not fatal and does not require the dismissal of the indictment. 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 145 (4th ed. 2015). In this instance, consolidation, rather than dismissal is the right remedy. The government's purpose in introducing

14

Count Two of the Superseding indictment was to provide an alternative theory of liability by which the jury could convict Bradbury for violating 844(e). This tactic is expressly permitted by Federal Rule of Criminal Procedure 7(c)(1) which allows the government to allege that "the defendant committed [an offense] by one or more specified means." Dismissing Count Two would cure the multiplicity problem, but deny the government its ability to prosecute its case. Consolidating or merging the two counts, on the other hand, cures the problem while preserving the Government's broad discretion in carrying out criminal prosecutions. It is therefore, the correct remedy here. *See, e.g.*, *United States v. Platter*, 514 F.3d 782, 787 (8th Cir. 2008) (holding the proper remedy for multiplicitous counts is merger into one count). And Bradbury agrees. [DE 78 at 2.] Therefore, I order the Government to consolidate the two counts of the Superseding Indictment.

## Conclusion

Accordingly, the Defendant's Motion to Suppress [DE 55] is **DENIED**. Defendant's Motion for a *Franks* Hearing [DE 71] is **DENIED**. Defendant's Motion to Dismiss the Multiplicitous Count of the Indictment [DE 67] is **GRANTED**. The government is ordered to consolidate the two counts of the Superseding Indictment into a single count.

15

**SO ORDERED**.

ENTERED: June 15, 2015

                                              <u>s/ Philip P. Simon</u>
                                              PHILIP P. SIMON, JUDGE
                                              UNITED STATES DISTRICT COURT