UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO. 2:14 CR 71 PPS |
| | ) | |
| SAMUEL L. BRADBURY | ) | |

## OPINION AND ORDER

This matter is before me on the Government's Motion to Exclude Testimony of Defense Experts Erik Nielson and Kyra Gaunt. (DE 117.) I already ruled from the bench on both experts, allowing both to testify (*see* DE 127 for Erik Nielson and DE 135 for Kyra Gaunt), but I said that I would issue a written opinion about Dr. Kyra Gaunt specifically. This is that opinion.

**Background**

Samuel Bradbury was charged with one count of making threats to use fire or explosives to destroy a building, specifically, the Tippecanoe County Courthouse and to kill various local government officials. *See* 18 U.S.C. § 844(e). The threat was conveyed via the social media platform of Facebook. Bradbury was found guilty after a four day jury trial.

During the trial, Bradbury offered Dr. Kyra Gaunt as an expert in social media to testify about the general behavior of Facebook users. More specifically, Bradbury sought Gaunt's testimony as to how Facebook users interact with the platform and how Bradbury, in particular, interacted with Facebook. In moving to exclude Gaunt's

testimony, the Government's primary arguments were that Gaunt's research didn't pertain to Facebook or the making of threats, that she wasn't qualified to interpret Mr. Bradbury's intent when he made his post to Facebook, and that generalized testimony regarding how people interact on Facebook wouldn't be helpful.  (*See generally* DE 117.) After considering arguments from both parties, and after hearing testimony from Gaunt outside of the presence of the jury (DE 135), I allowed Gaunt to testify, but limited her testimony to how people interact on Facebook in general.  I specifically prohibited her from testifying about the defendant himself or his Facebook posts, as such testimony likely falls within Federal Rule of Evidence 704(b)'s prohibition against experts stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed.R.Ev. 704(b).  I gave a detailed oral ruling on the record, and what follows is a further explanation of why I ruled the way I did.

**Discussion**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 (1993).  *See Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 provides, in relevant part, that if "scientific, technical or other specialized knowledge will help the trier of fact[,] . . . a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion . . . ."  Fed. R. Evid. 702.  The Rule "also requires that: (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and

methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

Under this framework, I must act as a gatekeeper for expert testimony, determining prior to admission whether the testimony is both relevant and reliable. *U.S. v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). In conducting this inquiry, I'm supposed to focus "solely on principles and methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (citation and internal quotation marks omitted). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). This standard applies equally to the social sciences as to more technical sciences. *U.S. v. Mamah*, 332 F.3d 475, 477-78 (7th Cir. 2003).

Dr. Gaunt has a Ph.D. in Ethnomusicology (a type of anthropology) from the University of Michigan. (DE 109.) She is currently a professor at the Baruch College – City University of New York in the sociology and anthropology department where she teaches various undergraduate sociology and anthropology courses. (*Id.*) She has published and spoken extensively on topics relating to the intersection of race, gender, and the popular social media website YouTube. (*Id.*)

Gaunt has also researched how people use social media. Outside of the presence of the jury, Gaunt testified at length about the work she has done to-date studying behavioral patterns of Facebook users. In a nutshell, Gaunt specializes in the

unintended consequences of peoples' activity on social media. She looks at both what a person actually posts and what others say about the person online – in her words, the person's digital "footprint" and digital "shadow." Gaunt testified that she has been collecting data on Facebook usage from her students since about 2008. That has resulted in a body of data from between 60-90 students each semester for the past seven years. Starting in 2011, she began analyzing and coding the data, and then in 2012, she began publishing articles analyzing the behaviors she studied on Facebook.

Based on this work, Gaunt is qualified to opine as to the general behavioral patterns of Facebook users. She has "grounded her work in social science principles" and has demonstrated to me that her work "yielded facts and data sufficient to support [her] proposed testimony" (*Mamah*, 332 F.3d at 477-78) – namely, that people exhibit various behavioral patterns when interacting with social media.

Gaunt has not, however, demonstrated that she has seen sufficient data from the defendant, himself. Gaunt testified that she was provided with Bradbury's Facebook post and the various comments made to the post. But she wasn't provided with any other examples of Bradbury's Facebook activity. It seems a stretch to be able to opine as to Bradbury's behavioral patterns on Facebook, much less his intent behind one specific post, based on only one post. In that respect, I agree with the Government that Gaunt wasn't qualified to speak as to Bradbury's intent.

Even if that data were sufficient, I would still limit her testimony because her opining on Bradbury's intent is impermissible under Federal Rule of Evidence 704(b).

4

Rule 704(b) states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." *See also U.S. v. Hillsberg*, 812 F.2d 328, 331-32 (7th Cir. 1987) (experts are not allowed to make the final inference regarding defendant's mental state where that mental state is an element of the crime charged – that inference is for the jury). Bradbury was charged with a crime that requires that he willfully made a threat; in other words, to be guilty of the crime charged, Bradbury must have intended that his words be viewed in a certain light. By testifying as to how Bradbury intended his words to be viewed when making his Facebook post, Gaunt would be testifying on that exact ultimate issue in violation of Rule 704(b).

Instead, Gaunt was allowed to testify as to people's interactions with Facebook in general, as supported by her research. I disagree with the Government that such testimony wouldn't be helpful to the jury. The way people interact with Facebook was central to the case, making this undoubtedly relevant testimony. Such testimony is particularly helpful in a case like this where the expert provides "the jury a view of the evidence well beyond their everyday experience." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) (reversing district court's decision to exclude sociologist from testifying in a housing discrimination suit about how an all-White advertising campaign affects African Americans). Quite frankly, after hearing from Gaunt outside of the presence of the jury, I found her testimony to be helpful to my own understanding of

5

how Facebook works and how users interact with it. I believe the jury would similarly benefit as Gaunt's testimony gives some context to the basic subject of this case – online communications.

Also, even though such testimony may have bore on the ultimate issue of Bradbury's intent, this testimony doesn't run afoul of Rule 704(b) because this more general testimony put the final decision as to whether Bradbury's actions conformed with those general behaviors in the hands of the jury. Although its challenging to find a truly analogous case to the one at hand given what a new phenomenon social media is, Gaunt's testimony strikes me as similar to when a police officer testifies as an expert about the general behaviors of people engaged in criminal activity. In those cases, police officers are routinely allowed to testify about the general behavioral patterns or actions of those engaged in criminal activity (*e.g.* how drug dealers typically package drugs for sale, "coded" speech used by individuals selling drugs or guns, etc.), so long as they do not take the further forbidden step of commenting as to what the defendant's mental state or intention was. *See e.g. U.S. v. Lipscomb*, 14 F.3d 1236, 1239-40 (7th Cir. 1994) (expert law enforcement testimony regarding what people with a certain intent generally do based on the officer's experience and knowledge is permissible so long as the officer does not testify about the defendant's intent); *U.S. v. Are*, 590 F.3d 499, 512-14 (7th Cir. 2009) (same).

Similarly, I limited Gaunt's testimony so that she was allowed to testify about how users typically interact with Facebook without commenting on Bradbury's actual

6

mental state. It was then up to the jury to decide whether Bradbury's actions or state of mind was consistent with Gaunt's testimony. It was for these reasons I **DENIED** the Government's motion to exclude Gaunt's testimony (DE 117), but her testimony was limited as indicated above.

**SO ORDERED.**


ENTERED: July 31, 2015

                                            s/Philip P. Simon
                                            PHILIP P. SIMON, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT